**INTEGRITY MANAGEMENT INTERNATIONAL, INC.,**
Plaintiff,

v.

**TOMBS & SONS, INC., and Leroy C. Tombs, Defendants.**

**Civ. A. No. 83–4231.**

United States District Court,
D. Kansas.

July 15, 1985.

Gary D. McCallister, Davis, Unrein, Hummer & McCallister, Topeka, Kan., for plaintiff.

Eldon J. Shields, McDonald & Dykes, Steven D. Kort, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

In this action, defendant Tombs & Sons, Inc., was the low bidder on a food service contract let by the federal government. Plaintiff Integrity Management International, Inc., was the second low bidder. To qualify for this contract, each bidder was required to self-certify that it met the Small Business Administration's definition of a "small business." Both parties did so certify, and defendant was awarded the contract. Alleging that defendant's self-certification was erroneous, plaintiff brings this action to recover both actual and punitive damages. (Defendant Leroy C. Tombs is the president of, and major shareholder in, defendant Tombs & Sons, Inc. His liability in this action would appear to depend upon a finding that Tombs & Sons was his mere alter ego. Throughout this memorandum, then, the term "defendant" will refer only to his corporation.)

The matter was tried to the court on May 30 and 31, 1985. Invoking the court's diversity jurisdiction, plaintiff offered evidence to support recovery on alternative theories of fraud, unjust enrichment, and intentional interference with prospective contractual relations. At the close of trial, we expressed some doubt as to the viability of such state law claims in the context of the federal government's competitive bidding process. The parties were invited to submit supplemental briefs on that legal issue, and plaintiff chose to do so. We now conclude that the federal Small Business Act and its implementing size regulations do preempt the state law claims upon which plaintiff relies.

The parties agree that the Small Business Act, 15 U.S.C. §§ 631 *et seq.*, does

not authorize a private cause of action by an unsuccessful bidder against a successful bidder on a government contract as to which only small businesses are allowed to bid. *See Savini Construction Co. v. Crooks Brothers Construction Co.,* 540 F.2d 1355, 1359 (9th Cir.1974); *Royal Services, Inc. v. Maintenance, Inc.,* 361 F.2d 86, 92 (5th Cir.1966); *Northland Equities, Inc. v. Gateway Center Corp.,* 441 F.Supp. 259, 264 (E.D.Pa.1977). As plaintiff correctly notes, however, that is not the issue in this case. Plaintiff's claims are based not on the federal Act, but on various state common law causes of action. We must thus determine whether the federal Act and its regulations preempt the state law claims asserted here.

In *Iconco v. Jensen Construction Co.,* 622 F.2d 1291 (8th Cir.1980), the court acknowledged the cases cited above, but proceeded to hold that certain state law claims were *not* preempted by these federal statutes and regulations. For the reasons stated below, we respectfully disagree with the analysis of the *Iconco* court.

As the Eighth Circuit acknowledged, federal regulation of small business set asides in the federal procurement process is extensive. In enacting the Small Business Act, Congress

> directed the awarding of contracts to small-business concerns as necessary to assure that they receive a fair proportion; the SBA and the government agency involved were authorized to make such determinations for individual contracts or for classes of contracts. 15 U.S.C. § 644. The making of any false statement for the purpose of obtaining anything of value under the Act was made a crime punishable by fine and imprisonment. 15 U.S.C. § 645. The Administrator was directed to promulgate regulations necessary to carry out the authority vested in the SBA under the Act. 15 U.S.C. § 634(b)(6).
>
> ... The implementing regulations, 13 C.F.R. § 121 *et seq.* (1974), allow any bidder or other interested person to challenge the small-business status of any

other bidder. The challenge must be in writing, and delivered to the responsible contracting officer within five days after the bid opening; the contracting officer must then forward the protest to the SBA. The SBA, in turn, must advise the protested bidder and ask for a response to the challenge. The bidder whose status is protested must respond within three days after it receives the protest. If it does not, the SBA will rule that it is not a small business. 13 C.F.R. § 121.-3–5 (1974). Any determination of size may be appealed to the Size Appeal Board, which must, if the case is concerned with a pending procurement, act within five days. The Board receives evidence and then issues a written decision, which, absent reconsideration, is the final administrative decision. 13 C.F.R. § 121.3–6(g)(5) (1974).

*Iconco,* 622 F.2d at 1297.

"Pre-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)). In this case, such "persuasive reasons" do exist for finding plaintiff's state law claims preempted by the federal statutes and regulations cited above.

■ We agree with the Eighth Circuit that Congress had two primary goals in mind when it established this statutory and regulatory scheme. It wished both "to help small business" and "to assure that government contracts were performed in a timely and competent manner." *Iconco,* 622 F.2d at 1298. The state law claims asserted by plaintiff are consistent with the first of these two goals. But, as other federal courts have persuasively reasoned, the second goal could easily be frustrated if unsuccessful bidders were allowed to sue

a bidder to whom a government contract had been awarded.

For instance, the Ninth Circuit noted in *Savini Construction* that:

[t]his Congressional purpose of aiding small business only insofar as the expeditious administration of government contracts is not jeopardized could be thwarted by permitting the private remedy requested here. In the present case, the federal contracting officer determined that the public interest would be better served by permitting Crooks Brothers to proceed with the emergency construction project. Had Crooks Brothers known that, depending on the post-award outcome of the size appeal, it would be subject to suit for its profits, it might well have declined to accept the award. Or, having accepted, it might have refused to continue work on the contract following the Size Appeals Board determination that it was originally ineligible to bid. Finally, although Crooks Brothers might have continued to execute the contract, serious problems of quality and speed of work could have arisen given the possible deprivation of profits at the conclusion of the project.

The likelihood that one such event would occur in the absence of a profit incentive is substantial. And the occurrence of any would undermine the Congressional intent to insure competency in the execution of government contracts and to eliminate delay when time is a crucial factor.

*Savini Construction,* 540 F.2d at 1359.

By pursuing the size appeals process noted above, an unsuccessful bidder obtains a resolution of the dispute *before* performance of the contract is begun. By contrast, plaintiff in this action seeks to recover, *inter alia,* profits the defendant either did earn or should have earned in the over three years it has performed under this contract. Such a possibility clearly troubled the *Northland Equities* court, and we agree with its analysis:

While this court by no means wishes to condone possible fraud, neither does it

want to encourage possibly speculative plaintiffs to wait until a building is constructed and inhabited before attacking the propriety of the initial award. This would wreak havoc on procurement. In order to be compatible with statutory goals, a remedial scheme must guarantee that the bidder will act at a time when the proper bidder can still be selected. *By telling the unsuccessful bidder that he may wait until after his competitor has performed and then sue to recover possible lost profits, the courts would provide an irresistible disincentive to his coming forth at an earlier time. Any award goes into the private pocket of the unsuccessful bidder, not into the public treasury, even though the government suffers by not having procured the most advantageous bid.*

*Northland Equities,* 441 F.Supp. at 263 (emphasis added).

Admittedly, both the *Savini Construction* and *Northland Equities* courts were speaking in a slightly different legal context. The issue in those cases was whether the Small Business Act impliedly created a private cause of action. Here the issue is whether that Act and its implementing regulations effectively preempts certain state law causes of action. Yet even the *Iconco* court realized that, to some extent, "the language used in those cases supports the conclusion that *any* private suit by an unsuccessful bidder against a successful one is inconsistent with Congressional intent and would jeopardize the proper administration of the government's contract procurement system." 622 F.2d at 1299 (emphasis added). In *Iconco,* the Eighth Circuit simply disagreed with that conclusion, dismissing the cited considerations as "speculative." We find greater merit in the analysis of the Ninth Circuit and the Eastern District of Pennsylvania in *Savini Construction* and *Northland Equities,* and thus respectfully disagree with the Eighth Circuit's holding in *Iconco.*

Because we are persuaded that regulation of the competitive bidding process on federal government contracts is a

uniquely federal prerogative, we conclude that state law claims arising in this context are preempted by federal law. We thus need not address defendant's other contentions, *i.e.*, that it *was* a "small business," or that plaintiff failed to prove all of the elements of its state law claims.

The clerk is directed to enter judgment in favor of defendants Tombs & Sons, Inc., and Leroy C. Tombs, and against plaintiff Integrity Management International, Inc.

IT IS SO ORDERED.