**JOHN C. HOLLAND ENTERPRISES, INC. Plaintiff,**

v.

**J.P. MASCARO & SONS, INC., et al, Defendants.**

Civ. A. No. 86–219–N.

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 9, 1987.

John M. Carter, Portsmouth, Va., George John Keto, Richard N. Bagenstos, Urban A. Lester, Washington, D.C., for plaintiff.

Gordon B. Tayloe, Jr., Cooper & Davis, Portsmouth, Va., for defendants.

## ORDER

DOUMAR, District Judge.

Plaintiff, John C. Holland Enterprises, Inc. ("Holland") was the disappointed competitive bidder on a contract for solid waste disposal services that was let by the Norfolk Naval Shipyard as a small business set-aside. The contract was initially awarded to defendants ("Mascaro"). Plaintiff exercised its statutory protest rights, alleging that Mascaro was not a qualified bidder because it was not a small business enterprises.

Mascaro was debarred from the contract upon a finding by the Small Business Administration that Mascaro was not a small business. The contract was subsequently rebid and awarded to the plaintiff. Plaintiff brought this suit seeking an award of damages based upon Mascaro's performance of the contract for a period of one year and upon Mascaro's conduct in obtaining the award of the contract. The suit is now before this Court on Mascaro's motion to dismiss the various counts of the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

This Court will first consider general principles which will apply to the entire

case and then analyze the individual counts of the complaint.

## I. *Rule 12(b)(6) of the Federal Rules of Civil Procedure*

A motion to dismiss tests the sufficiency of the complaint rather than the merits of the action: "[a] Rule 12(b) motion to dismiss is directed solely toward the defects of the plaintiff's claim for relief, without concern for the merits of the controversy." *McIntosh v. Garofalo,* 367 F.Supp. 501, 503 (W.D.Pa.1973). Dismissal of the plaintiff's claim at this stage of the proceeding is proper only when the plaintiff has failed to state "a claim upon which relief can be granted." *Dioguardi v. Durning,* 139 F.2d 774, 775 (2d Cir.1944). In ruling upon a motion to dismiss "the complaint is construed in the light most favorable to plaintiffs and its allegations are taken as true." *Davis v. City of Portsmouth, Virginia,* 579 F.Supp. 1205, 1209–10 (E.D.Va.1983) (citation omitted), *aff'd mem.,* 742 F.2d 1448 (4th Cir.1984). *See also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). At this stage of the proceeding the federal court need only determine whether plaintiff's claims have a sufficient basis in law to warrant further inquiry into the facts.

## II. *Plaintiff's Standing to Sue*

Plaintiff's seven-count complaint advances several theories of recovery against the defendant: money received; fraud; RICO; negligence and conspiracy. Complaint at 1. Before addressing the sufficiency of each count of the complaint, the Court must determine whether the plaintiff has standing to sue.

■ The defendants maintain that a disappointed bidder on a federal procurement contract lacks standing to sue the successful bidder. Defendants' Memorandum of Law at 2. The Court disagrees.

Initially it is noted that the jurisdiction of the District Court in this case is based upon the diversity of citizenship between the parties and upon an alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Nowhere in the complaint does plaintiff allege that federal law creates a federal cause of action in favor of a disappointed bidder. Thus, the question before this Court is whether a disappointed bidder on a federal procurement contract can have its state law claims against the successful bidder heard by invoking the diversity jurisdiction of the federal district court.

The Small Business Act, under which the instant services contract was let, does not create an express cause of action by the disappointed bidder against a successful bidder. *Iconco v. Jensen Construction Co.,* 622 F.2d 1291, 1297–98 (8th Cir.1980); *Royal Services, Inc. v. Maintenance, Inc.,* 361 F.2d 86, 92 (5th Cir.1966). Further, the federal courts have expressly declined to recognize an implied right of action by the disappointed bidder under the Small Business Act. *Savini Construction Co. v. Crooks Brothers Construction Co.,* 540 F.2d 1355, 1359 (9th Cir.1974); *Northland Equities, Inc. v. Gateway Center Corp.,* 441 F.Supp. 259, 262–64 (E.D.Pa.1977).

The absence of an express or implied federal cause of action, however, does not necessarily indicate that the federal procurement statute preempts all state law claims by a disappointed bidder on an SBA procurement. The federal courts have disagreed as to whether the SBA preempts all state law causes of action based on SBA procurements. In *Integrity Management International, Inc. v. Tombs & Sons, Inc.,* 614 F.Supp. 243 (D.Kan.1985), the Kansas district court held that an unsuccessful bidder's state common law causes of action were preempted by the Small Business Act and federal regulations enacted pursuant thereto. The court held that "[b]ecause ... regulation of the competitive bidding process on federal government contracts is a uniquely federal prerogative, we conclude that state law claims arising in this context are preempted by federal law." *Id.* at 246–47.

In so holding, the *Integrity Management* court expressly disagreed with the

Eighth Circuit's holding in *Iconco.* *Id.* at 246. In *Iconco,* the Eighth Circuit held that Congress had not impliedly prohibited the State of Iowa from using the provisions of the Small Business Act to determine whether a disappointed bidder was entitled to sue a successful bidder for fraud and unjust enrichment. 622 F.2d at 1298. The Eleventh Circuit has also held that a disappointed bidder's state law causes of action are not expressly or impliedly preempted by the SBA: "Congress, by enacting the Small Business Act, did not preempt the field so as to preclude a state cause of action based upon the Act as a standard in determining whether the actions of fraud, unjust enrichment or interference with a business relationship are available to a second low bidder against a low successful bidder of a federal contract when the latter has misrepresented itself as a small business." *Tectonics, Inc. of Florida v. Castle Construction Co.,* 753 F.2d 957, 964 (11th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 143, 88 L.Ed.2d 118 (1985).

The Supreme Court's holding in *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) lends support to this position. In *Miree,* the court found that it was not necessary to apply federal common law to determine whether the third-party beneficiaries of a contract to which the United States was a party had standing to bring a diversity action against the second contracting party: "t]he question of whether petitioners may sue respondent does not require decision under federal common law since the litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome. On the other hand, nothing we

say here forecloses the applicability of federal common law in interpreting the rights and duties of the United States under federal contracts." 433 U.S. at 31, 97 S.Ct. at 2495. *See also* 17 Wright, Miller & Cooper, Federal Practice and Procedure § 4211 (federal courts enforcing federal rights are not bound by limitations on the jurisdiction of the state courts, whereas federal courts sitting in diversity must look to state "door closing" statutes).

In view of the foregoing, the Court declines at this time to dismiss the complaint on the grounds that plaintiff, a disappointed bidder, lacks standing to sue a successful bidder.[1] The Court now turns to the question of proper parties and the individual counts of the complaint to determine whether plaintiff has stated a claim under state law (Counts I, II, III, IV, VI, VII) or federal law (Count V "RICO").

## III. *Improper Parties*

Mascaro has moved to dismiss three of the individual defendants. J.P. Mascaro, Sr. died on April 23, 1981. Plaintiff does not oppose the motion to dismiss J.P. Mascaro, Sr. as a party; that motion is hereby GRANTED.

Defendants further allege that both Frank Mascaro and Louis Mascaro are shareholders of J.P. Mascaro & Sons, Inc., but that neither is a director or officer and that neither has the authority to make executive or management decisions on the corporation's behalf. Plaintiff alleges that Louis Mascaro was the Secretary and that Frank Mascaro was the Treasurer of the corporation.

---

1. Both parties cite *Motor Coach Industries, Inc. v. Dole,* 725 F.2d 958 (4th Cir.1984) in support of their respective positions. In *Motor Coach,* the Fourth Circuit held that a disappointed bidder on a federal procurement contract had standing to sue to enjoin performance of the contract. *Motor Coach* is distinguishable from the instant situation in that it was a suit brought against the government, not against a successful bidder, and was based upon the government's failure to adhere to federal procurement statutes and regulations. Furthermore, in that case, the plaintiff was proceeding on a federal cause of action

created by the Administrative Procedure Act, 5 U.S.C. § 702. The Act expressly permits a party that has been adversely affected by an agency action the right to seek review of that action in the federal courts. The Court does not find *Motor Coach* dispositive because this case does not involve a federally-created cause of action by the disappointed bidder, and does not seek to challenge any action by a federal agency. In contrast, it is a suit between private litigants that involves state law causes of action (with the exception of the RICO count).

For purposes of this motion to dismiss, the Court accepts plaintiff's allegations as true, insofar as further inquiry into the matter would require a factual investigation not appropriate at this stage of the litigation. Defendants' motion to dismiss the individual defendants Louis Mascaro and Frank Mascaro is hereby DENIED.

## IV. *Count I: Unjust Enrichment*

In Count I of the complaint the plaintiff alleges that defendants falsely certified Mascaro as a qualified small business when Mascaro submitted its bid proposal to the Norfolk Naval Shipyard with the intention of deceiving the United States Government and all other bidders. Plaintiff alleges that defendants knew · or should have known that defendants did not qualify as a small business under applicable federal regulations. The Norfolk Naval Shipyard relied upon Mascaro's false certification in awarding the contract to Mascaro. Plaintiff claims that plaintiff was the lowest qualified bidder on the contract and that it would have been awarded the contract but for defendants' false self-certification. Plaintiff seeks to impose a constructive trust on Mascaro for the profit realized during Mascaro's performance of the contract on the theory that Mascaro's misrepresentations caused a third party (the United States) to pay to Mascaro money that should have been paid to the plaintiff. Plaintiff also seeks an award of consequential damages stemming from the alleged fraud as well as an award of punitive damages. In response, Mascaro contends that there was no relationship between the parties as competing bidders that warrants the imposition of a constructive trust.

The action for unjust enrichment is known in Virginia law as an action of "assumpsit for money had and received." 4B Michie's Jurisprudence, Contracts § 105. The action lies when "one person has in his hands money equitably belonging to another." 2A Michie's Jurisprudence, Assumpsit § 17. It is a contract action that arises when there is a contractual relationship between the plaintiff and defendant. *Id.* § 18. Thus, the Virginia courts have allowed such a recovery in three classes of cases:

(1) Where there is an express contract in fact and privity in fact between the parties plaintiff and defendant.

(2) Where there is an implied contract in fact and privity in fact between the parties plaintiff and defendant.

(3) Where there is an implied contract in law and no privity in fact, but an implied privity in law between the plaintiff and defendant.

*City of Norfolk v. Norfolk County,* 120 Va. 356, 91 S.E. 820, 821 (1917). In this case, however, there was no privity and no contractual relationship between the parties.

Dictum in *City of Norfolk v. Norfolk County* suggests that in Virginia, a plaintiff may bring an action for "money had and received" to recover monies received by the defendant from a third party, but the case expressly states that in order to do so, the plaintiff must demonstrate that the plaintiff had a preexisting *right* to that fund. *City of Norfolk v. Norfolk County,* 91 S.E. at 826. In this case, the plaintiff has not alleged and cannot demonstrate a pre-existing right to a specific fund or contract.

Both state and federal courts have recognized that no party has a right to a government contract prior to its award. *See, e.g., Iconco v. Jensen Construction Co.,* 622 F.2d at 1299–1300; *Savini Construction Co. v. Crooks Brothers Construction Co.,* 540 F.2d at 1359 n. 9; *Taylor v. County Board of Arlington County,* 189 Va. 472, 53 S.E.2d 34 (1949). In this Court's view, a finding that the disappointed bidder would have received the contract "but for" the misrepresentations of the successful bidder does not constitute a finding that the disappointed bidder had a right to that contract, and thus, to the proceeds therefrom even assuming the proceeds would be the same, which does not necessarily follow. Without such a preexisting right, no cause of action for unjust enrichment may be brought against a third party in Virginia:

Where the defendant has received money from a third person by law or authority through some mistake or fraud, which but for the mistake or fraud would have vested the right to the money in the plaintiff, ... the plaintiff may recover whenever, but for the mistake or fraud, he would have had *unquestioned right* to the money. Such cases rest upon the plaintiff's *original right* to the fund.

*City of Norfolk v. Norfolk County*, 91 S.E. at 826 (emphasis added).

█ It is this Court's view that the Virginia courts would not allow a disappointed bidder to maintain an unjust enrichment cause of action against a successful bidder. The Virginia Public Procurement Act, Code of Virginia § 11–35 to 11–80, regulates all stages of the public procurement process; it permits a disappointed bidder to protest a contract award through administrative channels, but does not grant a disappointed bidder the right to sue a successful bidder. Federal courts, in refusing to imply a cause of action under federal procurement statutes that do not expressly create a cause of action on the part of the disappointed bidder, have based their refusal, to a large extent, on the effect such suits would have on the federal procurement process. *Northland Equities, Inc. v. Gateway Center Corp.*, 441 F.Supp. at 263–64.

Federal law and Virginia law create express remedies for the disappointed bidder on a public contract. To create additional causes of action in addition to the prescribed statutory remedies would, in this Court's view, discourage disappointed bidders from seeking prompt judicial and administrative review of contract awards. Further, allowing such collateral causes of action would create a possibility of litigation in each and every government procurement which in turn would give rise to an increase in the cost of doing business with the government. This cost increase could deter potential contractors from participating in government procurement, and might also divert needed funds from other sectors of government budgets, including social services programs. For the foregoing reasons, this Court feels that Virginia would not permit this cause of action to go forward, absent a clear statutory or judicial mandate. In this case, there is neither.

## V. Counts II, IV and VII: Conspiracy

In Count II, plaintiff alleges that the defendants "maliciously, and with intent to injure Plaintiff, conspired together to deprive Plaintiff of its reasonably anticipated profits on the contract in question by making a false self-certification to the Norfolk Naval Shipyard and by submitting documentation in support of that false certification to the Small Business Administration's Office of Hearings and Appeals. Complaint at 7.

Count II covers the period from April 6, 1984 to July 1985. Count IV covers the period from April 6, 1984 to September 1984 and alleges that defendants conspired to deprive plaintiff of the contract award. Count VII covers the period from April 1984 to June 1984 and alleges that defendants "maliciously, and with intent to injure plaintiff, conspired together to violate the duty of care imposed upon Mascaro by the Small Business Administration." Complaint at 16. Defendants' motion to dismiss the conspiracy counts states that Pasquale Macaro was solely responsible for the preparation of the bid, and therefore cannot be said to have conspired with anyone else, and that, as a matter of law a corporation cannot conspire with its own officers, directors and shareholders, because they are deemed a single legal entity.

█ Defendants' point is well taken. Only last year, the Virginia Supreme Court held that "there must be two persons to comprise a conspiracy, and a corporation, like an individual, cannot conspire with itself." *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797, 801 (1985) (citations omitted) (plaintiff who alleged that members of corporation's Board of Directors who prompted the corporation to discharge the plaintiff failed to allege a conspiracy to procure breach of plaintiff's employment contract with the defendant corporation). This principle is known as

the intracorporate conspiracy doctrine, and has been applied in the federal courts. *See, e.g., Buschi v. Kirven,* 775 F.2d 1240, 1251–53 (4th Cir.1985) (corporate officer and corporation constitute single entity which cannot conspire with itself; authorized acts of the officials constitute corporate action and do not form a basis for a conspiracy charge), *Buntin v. Board of Trustees of the Virginia Supplemental Retirement System,* 548 F.Supp. 657, 660 (W.D.Va.1982) (Director and Trustee of the Virginia Supplemental Retirement System are both "officials of the Commonwealth working for the Virginia Supplemental Retirement System and therefore comprise a single legal entity not capable of entering into a conspiracy.") (citations omitted).

Accordingly, the Court finds that Counts II, IV and VII of the complaint, which allege a conspiracy between the officers and directors of J.P. Mascaro & Sons, Inc., and the corporation itself, fail to state a cause of action under Virginia law, and are therefore DISMISSED.

## VI. *Count III: Fraud*

Plaintiff's allegations in the Count III of the complaint essentially repeat those of Count I. Plaintiff also alleges, in Count III, that "plaintiff relied upon the defendant's false certification as to its eligibility to bid on the contract," although the false certification was made to the Norfolk Naval Shipyard, and not to the plaintiff.

The Virginia Supreme Court has recently held that the elements of actual fraud are:

(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) *reliance by the party misled,* and (6) resulting damage to the party misled.

*Winn v. Aleda Construction Co., Inc.,* 227 Va. 304, 315 S.E.2d 193, 195 (1984) (citations omitted, emphasis added). *See also* 8B Michie's Jurisprudence, Fraud and Deceit § 3. "One of the fundamental principles in regard to fraudulent misrepresentations is the false statement must be believed and relied on *by the party to whom*

*it is addressed ...." Id.* § 22 (emphasis added).

In this case plaintiff alleges that plaintiff was damaged because the *government* relied upon the defendant's false self-certification in awarding the contract. Plaintiff has not shown and cannot show that plaintiff relied upon defendants' false certification and was damaged thereby. Plaintiff has failed to state a claim for fraud. Thus, Count III of the plaintiff's complaint is hereby DISMISSED.

## VII. *Count V: RICO*

In Count V of the complaint, plaintiff alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–1968. Plaintiff is proceeding under the "civil remedies" section of the Act, which permits "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS § 1962] [to] sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Plaintiff has alleged a violation of 18 U.S.C. § 1962(c) and (d), which provide:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962(c) and (d).

In order to state a cause of action for violation of § 1962, plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

The statutory definition of enterprise includes "any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). J.P. Mascaro & Sons, Inc. is a corporation, and thus within the definition of an enterprise.

■ Plaintiff alleges that defendant engaged in a "pattern of racketeering activity" consisting of multiple acts of mail and wire fraud. Violations of 18 U.S.C. § 1343 (wire fraud statute) and 18 U.S.C. § 1341 (mail fraud statute) are expressly included within the definition of racketeering activity. 18 U.S.C. § 1961(1). Whether these multiple acts of alleged mail and wire fraud constitute a "pattern of racketeering activity," is a question of fact. *See Sedima, S.P.R.L.,* 105 S.Ct. at 3285 n. 14. In this Court's view, the plaintiff has alleged a pattern of racketeering activity which must depend on the evidence at a trial. The only question remaining, then, is whether the plaintiff has properly pleaded violations of the mail and wire fraud statutes, which are the predicate offenses upon which the RICO count is based.

■ The essential elements of the offense of mail fraud are: "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *Linden v. United States,* 254 F.2d 560, 567 (4th Cir.1958). Defendant contends that if this Court sustains its motion to dismiss the fraud count of the complaint, the Court must also dismiss the RICO count. The Court's dismissal of the fraud count for failure to state a claim under Virginia law, however, does not preclude a finding of a "scheme to defraud" within the meaning of RICO, because a conviction for mail fraud does not depend upon a violation of state law. *United States v. Williams,* 545 F.2d 47, 50 (8th Cir.1976). *United States v. Bush,* 522 F.2d 641, 646 n. 6 (7th Cir.1975), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *United States v. States,* 488 F.2d 761, 767 (8th Cir.1973) ("the purpose of 18 U.S.C. § 1341 is to prevent the Postal Service from being used to carry out fraudulent schemes, regardless of what is the exact nature of the scheme and regardless of whether it happens to be forbidden by state law.") (citations omitted), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974).

■ As the requisite elements of a "scheme to defraud" under the wire fraud statue are the same as those under the mail fraud statute, the cases construing one have been held applicable to the other. *United States v. Lemire,* 720 F.2d 1327, 1334–35 n. 6 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). Thus, we find that plaintiff's allegations of mail and wire fraud are sufficient allegations of predicate acts for the RICO count of the complaint to survive a motion to dismiss on the pleadings. Plaintiff's motion to dismiss Count V of the complaint is hereby DENIED at this time.

VIII: *Count VI: Negligence*

In Count VI, plaintiff alleges that defendants acted negligently in submitting information to the Small Business Administration which defendants knew or should have known was false. Plaintiff contends that, in so doing, plaintiff violated the standard of care prescribed by the Small Business Administration regulations, and that plaintiff was injured thereby. Defendants assert that there was no privity or relationship between plaintiff and defendants that gave rise to a duty owed by the defendants to the plaintiff.

Under Virginia law, the plaintiff in a negligence action "must show affirmatively the defendant's failure to perform a duty owed to the former proximately resulting in injury." 13B Michie's Jurisprudence, Negligence § 53. Defendant maintains that the parties were not in privity, and hence, there was no duty flowing from the defendant to the plaintiff.

The Fourth Circuit has recently held that Virginia law does not allow a plaintiff not

**1250**

in privity with the defendant to recover for purely economic losses suffered as a consequence of the defendants' negligence. *Bryant Electric Co., Inc. v. City of Fredericksburg,* 762 F.2d 1192–96 (4th Cir.1985) (City commissioned architectual firm to design aqueduct and contractor to build it. Architect and contractor had no contractual relationship. Contractor sued architect for economic loss resulting from architect's negligent design and supervision. Recovery denied due to absence of privity between plaintiff and defendant).

■ Code of Virginia § 8.01–223, enacted in 1966, specifically provided that "where recovery of damages for injury to person ... or to property, resulting from negligence is sought, lack of privity between the parties shall be no defense." Code of Virginia § 8.01–223. The Fourth Circuit has held that the "injury to property" as used in the statute does not include economic loss, and therefore recovery for economic losses may not be had in Virginia in the absence of privity. *Bryant Electric Co., Inc. v. City of Fredericksburg,* 762 F.2d at 1194–96. *See also Ayyildiz v. Kidd,* 220 Va. 1080, 266 S.E.2d 108, 112–13 (1980) (physician-defendant in a frivolous malpractice suit could not sue plaintiff's attorney for negligence in bringing suit because plaintiff's attorney owed no duty to the defendant; court expressly declined to abrogate the privity requirement). Here, there is no duty alleged between plaintiff and defendants and seemingly the loss or damage is purely economic where no privity exists. Therefore, there is no cause of action for negligence under the facts alleged.

For the foregoing reasons, defendants' motion to dismiss Counts I, II, III, IV, VI and VII of the complaint is hereby GRANTED, and defendants' motion to dismiss Count V is hereby DENIED without prejudice. Defendants' motion to dismiss J.P. Mascaro, Sr. as a defendant is hereby GRANTED. Defendants' motion to dismiss Louis Mascaro and Frank Mascaro as defendants is hereby DENIED without prejudice.

IT IS SO ORDERED.